(126 So. 439)

No. 29941.

## In re HAMNER & CO., Limited.

June 17, 1929.

On the Merits Jan. 6, 1930.

Rehearing Denied Feb. 3, 1930.

Roberts & Naff and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, for appellants.

Bertram F. Barnette and J. R. Goff, both of Arcadia, for appellees.

On Motion to Dismiss the Appeal.

O'NIELL, C. J. The appellees have moved to dismiss this appeal on the ground that there was no citation of appeal, nor prayer for citation, notwithstanding the appeal was obtained by motion and order in open court at a term subsequent to that in which the judgment was rendered and signed.

The judgment was rendered by the district court in Bienville parish, which is in the Sec-

ond judicial district, embracing also Webster parish and Claiborne parish. The judgment was rendered and signed in open court on the 26th of February, and the appeal, which is only a devolutive appeal, was obtained by motion and order in open court on the 25th of March. The session of court in which the judgment was rendered continued in Bienville parish until the 8th of March, after which the court held a session of two weeks in Claiborne parish, and reconvened in Bienville parish on the 25th of March, the day on which the appeal was taken. In the order of court fixing the dates of the sessions to be held in each of the three parishes, the sessions are called "terms" of court. Section 43 of article 7 of the Constitution of 1921 (which was article 117 of the Constitution of 1898 and of 1913), and Act No. 163 of 1898, p. 320, carrying the provisions of article 117 of the Constitution of 1898 into effect, requires that every district court throughout the state shall hold a continuous session of ten months in each year, and requires that: "In each district composed of more than one parish, the judge shall sit alternately in each parish, as the public business may require."

The question presented by the motion to dismiss this appeal is whether the obtaining of an appeal by motion and order in open court *at the same session of ten months,* in which the judgment was rendered and signed, is sufficient to avoid the necessity for a citation of appeal, notwithstanding the judge held a session of court in another parish after the judgment was signed and before the appeal was taken. The question was answered in the affirmative in Ryland v. Harve M. Wheeler Lumber Co., 146 La. 787, 84 So. 55, where it was held that the word "session," as used in article 117 of the Constitution of 1898 and of 1913, was synonymous with "term," viz.:

"Where it appears that a district court has set apart the months of August and September as the period of its annual vacation, it necessarily follows that the months from October to July, inclusive, constitute the ten months' continuous session or term required by article 117 of the Constitution, and it also follows that an appeal taken in November from a judgment rendered in October is taken during the term at which the judgment was rendered, even though at a session subsequent to that at which the rendition took place, and that it is properly taken by motion and without citation of the appellee."

To the same effect were the rulings in State v. Winters, 109 La. 3, 33 So. 47; State v. Freddy, 118 La. 468, 43 So. 53; State v. Thompson, 121 La. 1051, 46 So. 1013; and Carr et al. v. Louisiana Central Lumber Co., 137 La. 419, 68 So. 747.

In the Act 163 of 1898 the so-called *terms* of court, which the district judges are required to hold in each parish alternately, are called "sessions," in every instance in which they are referred to in the statute. In the third section of the act it is said that the intent and meaning of section 43 of article 7 (which was then article 117) of the Constitution is that the order of a district court fixing the sessions in each parish in the judicial district shall not interrupt the continuity of the annual sessions of ten months, or affect the authority or duty of the judge to sit at any time in any parish in his district when the public interest may require it.

Counsel for the appellees in this case quotes and relies upon an expression taken from the syllabus of the opinion rendered, originally, in State v. Vicknair, 118 La. 963, 43 So. 635, viz.: "The expression 'open court,' as used in Act No. 108, p. 155, of 1898, means the actual session of the court while the judge is

on the bench, as contradistinguished from the 'continuous session,' of 10 months, provided for by article 117 of the Constitution." That idea was expressed in the opinion originally rendered in the case, but the decision was reversed on rehearing; and the author of the original opinion in that case was also the author of the opinion to the contrary, rendered subsequently, in Ryland v. Harve M. Wheeler Lumber Co., supra. It is said that the ruling made in the latter case might have been founded upon the fact that a motion for a new trial was pending and suspended execution of the judgment until the beginning of the session of court held subsequent to that in which the judgment was rendered and signed. It is true that that reason might have been given, but the fact is that it was not given, as the reason for overruling the motion to dismiss the appeal. The reason which was given was a sound one, and the lawyers practicing in the district courts have the right to rely upon our adhering to it.

The motion to dismiss the appeal is overruled.

### On the Merits.

LAND, J. On March 10, 1928, W. L. Hamner and J. M. Phillips were appointed coreceivers of Hamner & Co., Limited. They duly qualified as such by taking the oath and filing their respective bonds, and letters of receivership were issued to them.

On February 14, 1929, the coreceivers filed a final account and schedule and plan of the distribution of the proceeds, realized from the sale of the property. An order was obtained directing that same be filed and recorded in the receivership order book, and that notice be given and advertised as provided by law.

The Exchange National Bank of Shreveport was the only creditor who opposed the final account, the opposition being based upon the ground that the bank, which held two receivers' certificates of $5,000 each, had been ranked as an ordinary creditor.

This opposition and the final account of the receivers were regularly set down for trial, and, after trial had, judgment was rendered sustaining the opposition, and homologating the final account of the receivers as to the other items not opposed.

This judgment was recorded on the receivership order book, and, the time for obtaining a suspensive appeal having expired, the coreceivers proceeded to pay out the funds in their hands in accordance with the judgment, homologating the final account and ordering the funds distributed.

The judgment homologating the final account was rendered on February 26, 1929, and thereafter on March 25, 1929, Ardis & Co., Hicks Company, and Ogilvie Hardware Company filed a joint opposition to the final account of the coreceivers and to the coreceivers being discharged, alleging that opponents desired to take an appeal. Opponents prayed for service on the coreceivers, that the petition and opposition to their discharge be spread upon the receiver's order book, and for judgment preventing the coreceivers from being discharged.

On March 25, 1929, appellants applied for a devolutive appeal, alleging that they were aggrieved by the judgment homologating the final account, and "by each and every order heretofore rendered in this proceeding." On March 30, 1929, the devolutive appeal bond was filed in the lower court, and the various objections made against the gestion of the coreceivers, and against the final account filed by them, are urged for the first time on appeal in this court.

The contentions made by the appellants are as follows:

(1) That the order allowing payment of $17,500, with interest, to W. L. Hamner for money claimed to have been advanced, was in fact a distribution allowed without proof of the account or advertisement of the distribution to be made, and created an illegal preference in his favor over other creditors of the receivership.

(2) That the order allowing the claim of the Exchange National Bank as a cost of court was illegally entered, without proper proof and without any notice to interested creditors.

(3) That the receivers were authorized to purchase merchandise only for cash, and they and their sureties are personally liable to those creditors of the receivership whose accounts cannot be fully paid.

(4) That there is an apparent shortage of many thousand dollars upon the face of the final tableau of distribution.

None of these issues was raised and passed upon in the court below, for the reason that no opposition was made to the granting of any of the orders complained of, or to the homologation of the final account filed by the receivers, although all applications and orders granted to the coreceivers were spread upon the receivership order book, before being approved by the court.

It is provided in section 8 of Act No. 159 of 1898, the receivership act, that: "The clerk of the district court shall keep a book, to be known as the receivership order book, among the records of office, and shall immediately enter notice therein of the filings of every petition, motion, rule or application made in behalf of any person (giving title and number of cause, date of filing, name of petitioner and the object of the petition, etc.), and shall note on said book the time of filing petition, etc., and shall enter at large therein all

orders or decrees made by the court in relation to any receivership. No order shall be granted by the court until ten days after entry of such notice in the order books, except an order to show cause, or when circumstances in the opinion of the court require otherwise, and same is so stated in the order or decree."

In construing this section in Metropolitan Bank v. N. O. Brewing Association, 51 La. Ann. 1530, 26 So. 418, 420, the court said: "We do not understand that every creditor who does not choose to intervene in the proceedings, or to file any appearance of any sort, after the notification required by section 8 of the statute, retains all his rights to object, as have third persons. Provision was made for a statutory notice, by which all parties are bound. It was evidently not the object of the statute that, upon every application brought under section 8 of the statute, more notice should be given than was given in this case. After notification, it is incumbent upon the creditor to protect himself by filing such plea to that end as he may see proper."

In the syllabus to In re J. D. Connell Iron Works Co., 138 La. 702, 70 So. 617, it is stated that: "Where a claimant in receivership proceedings fails to object to the account of the receiver in the court below, he cannot, for the first time on appeal, urge specific objections to the account, the judgment appealed from being a general approval of the account as a whole."

In the opinion in the case of In re New Orleans Improvement & Banking Co., 4 La. Ann. 475, the court said: "Under the views expressed in Girod v. His Creditors, 2 Ann. 546, we can take no notice of the appeals of Duncan N. Hennen and P. Alvarez. Mr. Hennen filed no opposition in the District

Court, and the judgment homologating the account, so far as not opposed, is conclusive against him. We could not entertain his appeal without assuming original jurisdiction of the opposition first made by him in this court. Alvarez is in the same situation."

Besides, a receiver, like an executor, is not driven to proof of each separate item of the account, unless it is opposed. The presumption is in favor of the executor, or the receiver, who is an officer of the law, and direct proof of every item is not required. Succession of Bougere, 29 La. Ann. 378; Succession of Wederstrandt, 19 La. Ann. 494; Succession of Rabasse, 50 Ann. 746, 23 So. 910.

Vouchers were not filed by the coreceivers in proof of the final account, but both of them testified that each item of the account unopposed, including the schedules, was true and correct. This was sufficient.

The coreceivers also testified that the receivers' certificates presented by the opponent, Exchange National Bank, had not been paid, and that the bank was the holder of these certificates.

The coreceivers were authorized by the court to continue the business of the corporation; to sell at private sale to such customers as presented themselves from day to day, and in the usual course of business, at the regular prices; to purchase for cash such goods and merchandise as might be necessary to replenish the stock, supply the needs of customers, and preserve the trade of the establishment; and to employ clerks at certain salaries.

For the above purposes, the coreceivers presented a petition to the lower court, duly attested by each of them, and requested author-

ity to borrow $40,000 on receivers' certificates.

It is alleged in this petition that the coreceiver, Hamner, had already advanced on his personal credit $17,500 of the $40,000 needed, and petitioners prayed that he be reimbursed in this sum in receivers' certificates. An order to this effect was granted, was duly spread upon the receivership order book for 10 days, and, not having been opposed by appellants or any other creditor, judgment was rendered authorizing this amount to be borrowed, and directing that the money advanced by Hamner be refunded to him.

There is no suggestion of fraud or collusion made as to the reimbursement of the $17,500 to Hamner, the coreceiver. The fact that the sum had been advanced to the receivership by Hamner is supported by his affidavit, and that of his coreceiver, to the petition filed to secure authority for the loan of $40,000. In the absence of opposition by appellants or any other creditor, these affidavits constituted prima facie proof of the allegations contained in the petition.

The refunding of this amount to Hamner, the coreceiver, was not a distribution of funds made in a final account, but a mere reimbursement of funds advanced as an emergency loan to the receivership, until the sum necessary to be borrowed could be secured under orders of the court.

No timely opposition was made to any of the orders complained of, and no suspensive appeal was taken by appellants from any of them.

Judgment affirmed.

O'NIELL, C. J., and THOMPSON, J., concur in the decree.